534 A.2d 1141

Doris A. Stahl, Administratrix of the Estate of Michael J. Wilson, Deceased, Appellant *v.* Cocalico School District, Appellee.

Argued June 9, 1987, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Alan M. Feldman, Raynes, McCarty, Binder, Ross* & *Mundy,* with him, *Ezra Wohlgelernter, Law firm of Allen Rothenberg,* for appellant.

*J. Michael Flanagan, Flanagan and Smith,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 17, 1987:

Further consideration having been granted by Order of this Court dated October 28, 1987, our previous Opinion and Order filed August 24, 1987, is amended as follows.

Doris Stahl, Administratrix of Michael Wilson's estate, appeals the Lancaster County Common Pleas Court order sustaining Cocalico School District's (District) preliminary objections in the nature of a demurrer and dismissing her complaint. We reverse and remand.

Wilson, a twelve-year-old, was killed when he fell through a skylight at the Cocalico School. He climbed onto a trash dumpster located next to the school, and then onto the roof, in order to retrieve a ball.

In ruling upon preliminary objections in the nature of a demurrer, all well-pleaded facts and any inferences deducible therefrom must be accepted as true. *Bahian v. Department of Public Welfare,* 89 Pa. Commonwealth Ct. 644, 493 A.2d 803 (1985). A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985). Since sustaining a demurrer results in a denial of the pleader's claim, a demurrer should be sustained only in cases that clearly and without doubt fail to state a claim for which relief may be granted. If facts, as pleaded, state a claim for which relief may be granted under any theory of law, then there is sufficient doubt so as to require preliminary objections to be rejected. *Id.*

Stahl contends that the facts averred in the complaint come within the real property exception to governmental immunity, Section 8542(b)(3) of the Judicial Code.[1] Stahl alleges that (1) the District had *actual* knowledge of the dangerous condition giving rise to this incident,[2] (2) the heavy trash dumpster can be classified

---

[1] 42 Pa. C. S. §8542(a)(1) and (2) and (b)(3), provide in pertinent part:

(a) **Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action . . . ; and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). . . .

(b) **Acts which may impose liability.** . . .

. . . .

(3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person *intentionally trespassing* on real property in the possession of the local agency.

(Emphasis added.)

[2] The complaint alleged, *inter alia,* that:

(1) The District knew that children of tender years were playing in the immediate vicinity of the dumpster which was situated against the low roof of the school building.

(2) The District knew that children were utilizing the dumpster to gain access to the roof in order to retrieve balls.

(3) The District knew that once on the roof, children would come into contact with the skylight and were likely to be seriously injured by contact with it because the skylight was in a dangerous and defective condition.

as real property, and (3) the complaint states a cognizable cause of action.[3] We agree.

The dangerous condition to which Stahl refers in her complaint is the school's low roof and defective skylight. The complaint further alleged that, notwithstanding the District's awareness of the potential for serious injury to children, no remedial measures were taken.

Accepting all averments in Stahl's complaint as true, we hold that the common pleas court erred in concluding that, because the incident took place on Easter Sun-

---

[3] Stahl's action as stated in the complaint is grounded in part on the District's liability as recognized in Section 339 of Restatement (Second) of Torts, which provides:

Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Pennsylvania adopted Section 339 in *Bartleson v. Glen Alden Coal Co.*, 361 Pa. 519, 64 A.2d 846 (1949), and most recently recognized this "attractive nuisance" doctrine in *Wiegand v. Mars National Bank*, 308 Pa. Superior Ct. 218, 454 A.2d 99 (1982).

day, Wilson was an intentional trespasser[4] and the accident was unforeseeable as a matter of law. The fact that the incident took place on a Sunday is immaterial if the general use of the school yard was for recreational purposes and it was open to neighborhood children before or after school or on weekends. The complaint averred that the District knew that children were playing in the school yard and on the dumpster and, under the theory of liability which Stahl advances, the child's status as a trespasser does not preclude potential liability.[5]

Moreover, for the purposes of the real property exception, the conduct alleged in the complaint was directly related to the condition of the property.[6]

---

[4] The common pleas court concluded that Wilson was an intentional trespasser, thus foreclosing the applicability of the real property exception without affording Stahl the opportunity to develop evidence to the contrary.

We also note that the complaint pleaded "reckless indifference" and "recklessness" on the part of the District which, if proven, would impose liability upon the District even if the minor decedent were determined to be a trespasser. *Moss v. Reading Co.*, 418 Pa. 598, 212 A.2d 226 (1965); Restatement (Second) of Torts §339.

[5] We note that in *Frank v. SEPTA*, 96 Pa. Commonwealth Ct. 221, 506 A.2d 1015 (1986), we held that the language in Section 8542(b)(3) evinces the legislative intent to preclude trespassers from availing themselves of the advantage otherwise created by the real property exception. However, *Frank* can be distinguished. In *Frank*, the plaintiff avers that the decedent "jumped" off the station roof onto the top of an oncoming train and was killed when the train went under a bridge trestle. We held in that matter that Frank unequivocally was a trespasser. Conversely, Stahl avers that the decedent was not a trespasser and that the School District is liable under the attractive nuisance doctrine. She pleads further that the decedent was killed when he "tripped or fell" through a defective skylight while retrieving a ball from the low roof of his school. In contrast, there is nothing in the averments presented by Frank which would demonstrate a significant relationship between the alleged dangerous condition and the decedent's death.

[6] Specifically, the complaint averred, *inter alia*, that:

(a) The low school roof made it accessible to children climbing upon the adjacent dumpster, and,

*Fizzano v. Borough of Ridley Park*, 94 Pa. Commonwealth Ct. 179, 503 A.2d 57 (1986). This exception imposes liability for negligence which makes government-owned real property unsafe for activities for which it is regularly used, intended to be used or reasonably foreseen to be used. *Vann v. Board of Education, School District of Philadelphia*, 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983). Since Stahl pleaded factual allegations relating to a physical defect in the skylight, the contribution the low roof made to the accident, and the District's actual knowledge thereof, the complaint states a cause of action which fits within the ambit of the real property exception to governmental immunity.[7]

Furthermore, the heavy trash dumpster which had remained in the same location for an indefinite period of time can be classified as real property for exception purposes. *See Singer v. School District of Philadelphia*, 99 Pa. Commonwealth Ct. 553, 513 A.2d 1108 (1986).[8]

Accordingly, we reverse the common pleas court order sustaining the District's preliminary objections. This matter is remanded for further proceedings.

ORDER

The Lancaster County Common Pleas Court order, No. 1-1986 dated July 11, 1986, is reversed, and the case is remanded for further proceedings.

Jurisdiction relinquished.

---

(b) The skylight upon the roof was known by the District to be in a dangerous and defective condition.

[7] *See Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), where our Supreme Court held that the real estate exception applies only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury.

[8] In *Singer*, we recently held that mats used in a gymnasium are an integral part of the hardwood floors and therefore are within the District's care, custody and control of its real property subject to the real property exception. Here, the dumpster which was located next to the low roof also served an integral function to the operation of the school.