Marie BOWERS, Individually, and Sara Bowers, parent and natural guardian of Marie Bowers, and Sara Bowers, Individually

v.

HUFFY CORPORATION and Hills Department Stores and Y.L.C. Enterprises, Inc. and Kosta Realty, Inc., Aetna Warehousing Company, City of Pottsville and Lee S. Miller.

Civ. A. No. 88–5172.

United States District Court,
E.D. Pennsylvania.

June 29, 1990.

Martin Cohen, Jerry R. Knafo, Easton, Pa., for plaintiffs.

Frank N. Gallagher, Doylestown, Pa., for defendants, Huffy and Y.L.C.

Terance P. Kennedy, Philadelphia, Pa., for defendant Hills.

Bradford H. Charles, Lebanon, Pa., for defendant Kosta.

Richard A. Bausher, Reading, Pa., for defendant Pottsville.

Frank L. Tamulonis, Jr., Pottsville, Pa., for defendant Miller.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This diversity case comes before us by way of the motion of the third-party defendant City of Pottsville for summary judgment. The City claims that suit may not be brought against it because of governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat.Ann. § 8541 et seq. (Purdon 1982). The standards for granting summary judgment are well-known.

Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the mat-

ter but to determine whether there is a genuine issue for trial." *Id.*, 106 S.Ct at 2511. However, if the evidence is merely "colorable" or is "not significantly probative", summary judgment may be granted. *Id.*

 In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.*, 106 S.Ct. at 2552–53; *Anderson,* 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson,* 106 S.Ct. at 2513.

With the foregoing rules in mind, we summarize the facts as follows. On or about July 1, 1986, Marie Bowers was operating a ten-speed Huffy bicycle and was allegedly departing from a parking lot of defendant Aetna Warehousing Company which is located adjacent to Peacock Street in Pottsville, Pennsylvania. It was approximately 9:00 p.m. and, as she exited the parking lot, she was struck by a vehicle traveling west on Peacock Street being driven by defendant Lee S. Miller.

According to the plaintiffs' brief,[1] at the time of this collision, several witnesses observed the condition, climate and lighting that surrounded the area of the parking lot exit and have testified, by way of deposition, regarding these conditions. In particular, witnesses testified that the location where this accident occurred was dark and that there were very few lights that existed upon the roadway in the area of this accident scene. According to plaintiffs' brief, one witness testified that immediately upon hearing a loud noise outside her window, she ran to the window and looked outside and observed that it was dark. She also testified that she was unable specifically to state whether the person on the ground was a male or female or something else, but she realized that there had been some type of collision. The defendant driver, Lee Miller, testified that he never saw Marie Bowers' bicycle or Marie Bowers until she was right in front of his vehicle. According to the plaintiffs' brief, there is also evidence that the City of Pottsville received complaints from persons in the area of this accident complaining about speeding vehicles, the conditions of the roadway on Peacock Street, numerous accidents, and the fact that the roadway has been used as a by-pass to get from Pottsville to other locations.

Plaintiffs filed a products liability action claiming that the bicycle ridden by Marie Bowers at the time of the accident was defective. It is alleged that the bicycle was purchased by the plaintiffs at defendant Hills Department Store and manufactured and sold by defendant Huffy Corporation. Y.L.C. Enterprises, Inc., the designer of the bicycle, was joined as a third-party defendant by Hills Department Store and Huffy Corporation. Huffy Corporation and Y.L.C. Enterprises, Inc. then filed a Third–Party Complaint joining Kosta Real-

1. Not all of the depositions referred to in plaintiffs' brief have been filed with the court. Nevertheless, to afford plaintiffs an opportunity to present their case in the best light, we have taken the statements in their brief as being true for the purposes of this motion.

ty, Inc., Aetna Warehousing Company,[2] City of Pottsville and the driver, Lee S. Miller, as Third–Party Defendants. Plaintiffs have made no direct claim against the City of Pottsville in this action. The only specific acts of negligence against the City of Pottsville are found in Paragraph 2(b) of the Third–Party Complaint against the City, which reads as follows:

The vicinity where the minor plaintiff's accident occurred was in the City of Pottsville which failed in its duty to keep the street in proper condition, to provide adequate lighting and signs, and to require the owners of adjacent properties to keep their premises in good repair and clear of obstructions.

Oral depositions were taken to support defendant's motion for summary judgment.

■ When federal courts sit in diversity cases, they must apply the substantive law of the states where they sit. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When they are required to interpret or apply state law, they must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law. *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 (3d Cir.1985); *Connecticut Mutual Life Insurance Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). When, however, the highest court of the state has not authoritatively considered the issue, "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3d Cir. 1980), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *See also Becker v. Interstate Properties,* 569 F.2d 1203, 1205 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In this effort, the federal court must give "proper regard" to the relevant rulings of other courts within the state. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1965). *See also Erie Castings Co. v. Grinding Supply, Inc.,* 736 F.2d 99, 100 (3d Cir.1984); *Wyman,* 718 F.2d at 65.

■ The cause of action against the City of Pottsville is based upon the City's alleged failure properly to design, construct and maintain Peacock Street, causing visual obstructions, failure to provide proper or adequate lighting, and failure to provide warning signs.

The Political Subdivision Tort Claims Act provides, in Section 8541, as follows:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

The only two possible exceptions applicable to the case at bar are the trees, traffic controls and street lighting exception and the street exception. In this regard, 42 Pa.Cons.Stat.Ann. § 8542(b) provides:

(b) *Acts which may impose liability—* The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(4) *Trees, traffic controls and street lighting—*A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, . . .

. . . .

(6) *Streets*

(i) A dangerous condition of streets owned by the local agency, . . .

The Pennsylvania Supreme Court, in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), pointed out that the Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat.Ann. § 8542(b), represents an *exception* to governmental immunity and must be narrowly construed. In *Mas-*

---

**2.** Kosta Realty, Inc. and Aetna Warehousing, Inc. filed a cross-claim against the City of Pottsville in which it was alleged that the City's negligence was set forth in plaintiffs' amended complaint. Plaintiffs have not filed an amended complaint, although they have had ample time to file one.

*caro,* in construing the real estate [3] exception to governmental immunity, the Pennsylvania Supreme Court stated at 362, 523 A.2d 1118:

> We agree that the real estate exception to governmental immunity is a narrow exception and, by its own terms, refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees. Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others*, however, are specifically excluded in the general immunity Section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees.... (Court's emphasis).

Significantly, the Court held at 363, 523 A.2d 1118:

> We ... hold that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.
>
> We believe the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of third parties by its language of § 8541, *supra,* and that it has not seen fit to waive immunity for these actors or their acts in any of the eight exceptions. (Court's emphasis).

The Commonwealth Court of Pennsylvania recently decided the case of *Crowell v. City of Philadelphia,* 131 Pa.Commw. 418, 570 A.2d 626 (1990). The facts in *Crowell* are similar to those in the case at bar. In *Crowell,* a verdict was returned against the City and the Commonwealth Court reversed and entered judgment notwithstanding the verdict in favor of the City. The basis for the verdict in *Crowell* was an erroneous directional sign placed by the City resulting in a vehicle operated by a Mr. Lewis crossing a median divider and striking the Crowell vehicle. The Commonwealth Court pointed out that it previously held the analysis of the Supreme Court in *Mascaro* to be applicable in all eight exceptions to governmental immunity in *Herman v. Greene County Fair Board,* 112 Pa.Commw. 615, 535 A.2d 1251 (1988). The *Crowell* Court stated at 570 A.2d 630:

> Accordingly, we hold that the exception of Section 8542(b)(4) requires the Crowells to prove that the dangerous condition of the traffic directional sign *itself* caused the Crowell's injuries and not merely that the dangerous condition of the traffic directional sign *facilitated* the injury by the acts of Lewis, whose acts are outside the scope of liability contained in Section 8542(b)(4). Applying this standard, we are compelled to conclude that the City was entitled to the immunity granted by Section 8541. The dangerous condition of the traffic directional signal, standing alone, did not cause harm to the Crowells. No harm was caused to the Crowells until the erroneous traffic directional sign was acted upon by Lewis. Because the City caused no harm to the Crowells absent the conduct of Lewis, the City merely facilitated

---

**3.** The real estate exception found at 42 Pa.Cons. Stat.Ann. § 8542(b)(3) provides:

> (b) **Acts which may impose liability**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> ....
>
> (3) **Real property**—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally

trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:
(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
(iii) streets; or
(iv) sidewalks.

the Crowells' injuries by the acts of Lewis. (Emphasis supplied).

As indicated in the *Crowell* Court's opinion, *Crowell* "effectively eradicates joint tort-feasor liability on the part of the local agency."

The Pennsylvania Supreme Court went out of its way in *Mascaro* to make a broad policy statement. There were obviously major practical considerations reflecting the unique role of government in modern society. Similar factors undoubtedly influenced the *Crowell* decision. The government must maintain thousands of miles of public roads and highways in the Commonwealth of Pennsylvania. The government is well aware that there are thousands of motor vehicle accidents each year, and citizen complaints about heavy traffic and the like are not uncommon. No matter how negligent a motorist may be, an argument can almost always be made that an accident would not have happened had this or that been different. No Pennsylvania court has ever held that the government is an insurer of the traveling public or that the government must design roads and highways to be accident-proof. Nevertheless, that is exactly where cases like the one at bar would lead us if pursued to their logical end.

■■■ We live in an imperfect world and roads and highways are no exception. The Pennsylvania legislature has chosen to place the burden of reasonable and prudent conduct upon motorists when hazardous conditions are present, not upon local government. For instance, the assured clear distance rule, 75 Pa.Cons.Stat.Ann. § 3361 (Purdon 1977), provides that:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching or going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when *special hazards exist with respect to* pedestrians or other traffic or by reason of weather or *highway conditions*. (Emphasis supplied).

Local government has many pressing responsibilities, and its discretion should not be fettered by a requirement that it remove all obstructions or provide street lights or signs at every place where a nighttime accident might take place. We have read plaintiffs' argument that the Uniform Contribution Among Tort-feasors Act, 42 Pa. Cons.Stat.Ann. §§ 8321 *et seq.* (Purdon 1982), must be read *in pari materia* with the Political Subdivision Tort Claims Act. We do not believe that, in enacting the Uniform Contribution Among Tort-feasors Act, the Legislature ever intended to alter the doctrine of sovereign immunity.

In the case at bar, the alleged condition of Peacock Street, including lighting, signing or obstructions, did not *itself* cause plaintiff Marie Bowers' injuries. At most, any such condition may have *facilitated* plaintiff Marie Bowers' injuries. Accordingly, under the doctrine of the Pennsylvania Supreme Court in *Mascaro* and under *Crowell*, the defendant City of Pottsville is entitled to summary judgment.