## Hummel v. PennDOT

*Thomas R. Miller* and *Neil J. Rovner*, for plaintiffs.
*Jessie Smith*, for defendant PennDOT.

TURGEON, *J.* September 18, 1992—This case is presently before the court on the motion of defendant Commonwealth of Pennsylvania, Department of Transportation for summary judgment. The facts giving rise to this action occurred on June 2, 1984, when additional defendant Michael T. Sacks lost control of his automobile while traveling north on the Hummelstown/Middletown Road (State Route 3002), crossing over the center line and striking head-on a vehicle traveling in the opposite direction killing the driver, Sally Hummel, and injuring her two passengers. Additional defendant Sacks was later

convicted of homicide by vehicle, underage drinking and driving on the wrong side of the road.

The estate of Sally Hummel and the guardians of the two minor passengers brought suit against PennDOT and numerous other parties. Plaintiffs allege that PennDOT was negligent in its design, maintenance, construction and signing of the roadway whereby Sally Hummel was unable to avoid the collision because high banks and inadequate berming around the curve where the accident occurred prevented her from seeing the oncoming vehicle and/or avoiding it. PennDOT argues that judgment should be granted in its favor because additional defendant Sacks was negligent per se, having been convicted of operating his vehicle in a criminally intoxicated manner, and that his criminal violation is, as a matter of law, a superseding cause which absolves PennDOT of any liability.

Upon review of a motion for summary judgment, the court must accept as true all well-pleaded facts in the non-moving party's pleadings, depositions, answers to interrogatories and admissions, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. The moving party is entitled to judgment where no issues of material fact are at issue and the moving party is entitled to judgment as a matter of law. *Vincent v. Fuller Co.*, 400 Pa. Super. 108, 114, 582 A.2d 1367, 1370 (1990).

The plaintiff brings this action against PennDOT under the "real estate, highways and sidewalks" exception to sovereign immunity. 42 Pa.C.S. §8522(b)(4).[1]

---

1. "§8522. *Exceptions to sovereign immunity—*

"(b) Acts which may impose liability—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:...

PennDOT argues that evidence of additional defendant Sacks' criminal convictions are conclusive proof of his negligence and that PennDOT cannot, therefore, be a joint tortfeasor with Martz due to his criminal conduct as it constitutes a superseding cause of Sally Hummel's death and of the injuries to her two passengers, citing *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987); *Crowell v. City of Philadelphia,* 131 Pa. Commw. 418, 570 A.2d 626 (1990), and *Buschman v. Druck,* 139 Pa. Commw. 182, 590 A.2d 53 (1991). At the time PennDOT made this argument, the Commonwealth Court's decision in *Crowell* was on appeal to the Supreme Court and has since been reversed. *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992).[2] That decision has resolved many of the questions raised in *Mascaro, Buschman* and *Crowell,* including the question before us.

*Crowell* involved a legally intoxicated driver who correctly followed the directional arrow on a city-placed sign which, unfortunately, pointed in the wrong direction. As a result, the driver collided with an oncoming vehicle resulting in a death. In overturning the Commonwealth Court's decision, the Supreme Court held that the city, as a governmental unit, could be held jointly liable with the driver, assuming that the specific facts fell squarely within one of the exceptions to governmental immunity. *Id.* at 413, 613 A.2d at 1184.

It must be noted that *Crowell* involved interpretation of the governmental immunity statute[3] as opposed to sov-

---

"(4) Commonwealth real estate, highways and sidewalks—A dangerous condition of Commonwealth agency real estate and sidewalks ... and highways under the jurisdiction of a Commonwealth agency."

2. All future references to *Crowell* are to the Supreme Court decision unless otherwise noted.

3. 42 Pa.C.S. §§8541-8542.

ereign immunity statute[4] which is involved here, however, these two statutes are to be interpreted consistently. *Id.* at 410, 613 A.2d at 1183 n.8 (citing *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989)). In this case, there are no substantial differences with the statutory language of the governmental immunity statute applicable in *Crowell* and we will, therefore, apply its holding to our facts.[5] See also, *Buschman* (*Crowell* analysis regarding joint tortfeasor liability of a governmental unit applicable to whether a Commonwealth agency (PennDOT) could be held jointly liable).

PennDOT, therefore, can be held jointly liable for the plaintiffs' injuries, however, as the Supreme Court recognized in *Crowell,* PennDOT may be additionally insulated from liability, regardless of its own negligence, if the conduct of additional defendant Sacks constituted a superseding cause of Sally Hummel's death and the injuries to her two passengers. *Id.* at 413-14, 613 A.2d at 1185, n.12. A definition of "superseding" and "in-

---

4. 42 Pa.C.S. §§8521-8522.

5. One area where the statutes do differ occurs in the following passage from the governmental immunity statute which does not appear in the statutory immunity statute:

"Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. §8541.

Although this language provided the basis for the Commonwealth Court's decision in *Crowell,* that no governmental unit could be liable for *any* injury jointly caused with another tortfeaser, the Supreme Court, in overturning their holding, interpreted this language as prohibiting a governmental unit from being held vicariously liable, not jointly liable. *Id.* at 409-10, 613 A.2d at 1183. Therefore, the fact that this language appears in the governmental immunity statute and not in the sovereign immunity statute is not relevant because vicarious liability is not at issue here.

tervening" causes is contained in *Vattimo v. Lower Bucks County Hospital*, 502 Pa. 241, 465 A.2d 1231 (1983), a case which is cited with approval by the Supreme Court in *Crowell at 413-14, 613 A.2d at 1185, n.12. That definition states:*

"The terms 'intervening' and 'superseding' cause have to do with causes of injury which are independent of and come after the defendant's negligence, but which operate to produce a harm. An 'intervening' cause is merely one arising after the negligence of the defendant, and does not relieve the defendant of liability, often because the intervening cause was foreseeable, or if not foreseeable, was a normal incident of the risk created. A 'superseding' cause also arises after the defendant's negligence, but, does not operate to relieve the defendant of liability, usually for reasons having to do with the 'remoteness' of the cause or the harm from the original negligence of the defendant." *Vattimo* at 253 fn. 4, 465 A.2d at 1237 fn. 5 (opinion in support of affirmance, Flaherty, J.).

Furthermore, as stated in *Buschman*, "[i]t is hornbook law that criminal conduct which brings about harm within the risk created or increased by the negligence of another, does not constitute a superseding cause, relieving the other of liability, unless the criminal conduct is both of an intentional nature and not within the scope of the risk created by the other." 139 Pa. Commw. at 194, 590 A.2d at 59 (concurring opinion of Byer, J.). (citations omitted)

We conclude that the conduct of additional defendant Sacks did not constitute a superseding cause of plaintiffs' injuries because Sacks' negligence in losing control of his vehicle and crossing over the center line was not, as a matter of law, an unforeseeable event nor was it

beyond the scope of the risk allegedly created by PennDOT which was that the roadway did not allow for appropriate sight distances or berming to avoid such a driver. Whether the result of intoxication or not, it is not unusual for a driver to cross over the center line of a two-lane highway and collide with the oncoming vehicle. Plaintiff must be granted the opportunity to show that PennDOT was negligent in its design, maintenance, construction and signing of the roadway and that this negligence, if any, was a substantial factor in causing plaintiffs' injuries. See *Crowell,* at 413, 613 A.2d at 1184.[6]

Finally, we must note the Pennsylvania Supreme Court decision in *Dickens v. Horner,* 531 Pa. 127, 611 A.2d 693 (1992), which was decided simultaneously with *Crowell.* In *Dickens,* a police officer attempted to stop a driver who he suspected was driving without a valid license as well as driving under the influence of drugs. The driver refused to pull over and sped away, ran a stop sign and collided with a bystander causing her serious injuries. The bystander brought suit against the driver and the officer arguing that the officer's decision to pursue was the proximate cause of the accident. The Supreme Court in overturning the Commonwealth Court's decision to deny the officer's preliminary objections stated that the general rule was "that the criminal and negligent acts of third parties are superseding causes which absolve the original actor from liability for the harm caused by such third parties." *Id.* at 130-31, 611 A.2d at 695. The court concluded that the accident was caused solely by the driver and that the officer could not, therefore, be held liable. *Id.*

---

6. See also our decision of this date in *Sullens v. PennDOT,* 112 Dauphin Rep. 273 (1992).

We conclude that *Dickens* is distinguishable from this case and we do not interpret it to hold, as PennDOT suggests, that any criminal conduct by a third party is by definition a superseding cause. See *Id.* (concurring opinion of Cappy, J.). First, that interpretation would be in conflict with the Supreme Court's holding in *Crowell* whereby the court held that criminal conduct of a third party is dispositive on the issue of liability only where the criminal conduct rises to the level of a superseding cause.[7] *Id.* at 413-14, 613 A.2d at 1185 n.12. Second, *Dickens* on its facts is distinguishable. In *Dickens,* the court stressed the willful misconduct of the driver in choosing not to stop for the police officer and that it was solely within the driver's power to prevent the accident and concluding the driver was clearly the proximate and thereby superseding cause of the bystander's injuries. As discussed earlier, we concluded that additional defendant Sacks was not, as a matter of law, the superseding cause of the plaintiffs' injuries and accordingly, we enter the following

## ORDER

And now, September 18, 1992, the motion filed on behalf of defendant Commonwealth of Pennsylvania, Department of Transportation, for summary judgment is hereby denied.

---

7. The Supreme Court's rationales in its decisions of *Dickens* and *Crowell* may not, however, be totally consistent. We leave that topic, however, for subsequent appellate court decisions or a law review article, which, Judge Turgeon's law school classmate, the Hon. Robert L. Byer, has recently suggested could be titled "What in the Dickens do we do with Crowell?"